**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
ANGELA GONZALEZ,

                                    Plaintiff,                              **24-CV-9592 (JLR) (KHP)**

                    -against-

                                                                           **REPORT & RECOMMENDATION**
RANA POULTRY CORP., et al.,                                                 **ON DAMAGES INQUEST**

                                    Defendants.
------------------------------------------------------------------X
**TO:     HON. JENNIFER L. ROCHON, United States District Judge**
**FROM: KATHARINE H. PARKER, United States Magistrate Judge:**


Plaintiff Angela Gozalez ("Plaintiff") commenced this action against Rana Poultry Corp. d/b/a Saba Live Poultry ("Rana Poultry"), Sala Doe and Yamal Doe (the "Individual Defendants," together with Rana Poultry, the "Defendants"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 et seq., and the New York State Labor Law ("NYLL").  She alleges that she was not paid the minimum wage required under the NYLL, not paid overtime as required under the FLSA and the NYLL, not paid additional spread of hours pay as required under the NYLL, and not provided the required wage statements and notices as required under the NYLL.

Now before the Court for a Report and Recommendation is Plaintiff's motion for a default judgment and damages against Defendant Rana Poultry.

**FACTUAL BACKGROUND**

Rana Poultry is a New York Corporation located in the Bronx. (Compl. ¶¶ 5, 24.)  It is alleged to have annual revenues in excess of $500,000 in the last three years and used goods and materials produced in interstate commerce and employed at least two people who handled

1

such goods and materials. (Compl. ¶¶ 5-8.)  It is alleged to have employed six or more employees during the relevant period. (Compl. ¶ 18.)

Plaintiff worked for Rana Poultry in the Bronx from approximately January 2021 to October 2021 and again from March 2023 to September 2024. (Compl. ¶¶ 3, 25; ECF No. 24-3 ¶ 5.)  Her responsibilities included packing, cleaning and cutting chickens. (Compl. ¶ 26; ECF No. 24-3 ¶ 5.)  The Individual Defendants were owners of the business, hired Plaintiff, set her wages and schedule and maintained records. (Compl. ¶¶ 9-10; ECF No. 24-3 ¶ 6.)

Plaintiff worked six days per week from 8:00 a.m. until 6:15 p.m. (*i.e.*, 10.25 hours per day).  Her day off was Wednesday. (Compl. ¶ 29; ECF No. 24-3 ¶ 7.)  This meant she regularly worked 61.5 hours per week. (Compl. ¶ 30;  ECF No. 24-3 ¶ 8.)  Throughout her employment she received a daily rate in cash of $125, or $750 per week.  (Compl. ¶ 31; ECF No. 24-3 ¶ 9.)  Her pay therefore equaled a straight time rate of approximately $12.20 per hour (6 days/week x $125/day = $750/week; $750 weekly/61.5 hours weekly = ~$12.20 per hour).  She did not receive any additional amounts for overtime – just the day rate. (Compl. ¶ 35; ECF No. 24-3 ¶ 11.)  Plaintiff did not receive an extra hour's pay for days that she worked in excess of ten hours. (Compl. ¶ 37.)  Plaintiff's native language is Spanish. (ECF No. 24-3 ¶ 13.)

Plaintiff testified at a hearing on the default. (Appendix A (hereinafter "Tr.").)  She testified that Rana Poultry "said" they were going to pay her $125 per day in cash, amounting to $750 per week (for six days a week). (Tr. at 8:1-6, 9:7-11, 10:22-24.)  The pay never changed, and the hours were consistent. (Tr. at 8:15-23, 13:16-20.)  She never received "any receipt or any documentation at all explaining what [her] pay was for" or "how many hours [she] w[as] being paid for." (Tr. at 9:12-16, 11:25-12:5.)  She would punch in each day and was able to

review the punch cards. (Tr. at 12:6-23.)  She said the punch cards were not accurate to how she was paid, since she got paid a day rate and not hourly. (Tr. at 12:24-13:14.)

She testified she was also paid in cash and only got ten minutes or so "to eat fast and go back to work." (Tr. at 10:14-21.)  She saw no posters on the walls about pay rates and received no paper or any documents telling her about the wages she was supposed to receive by law. (Tr. at 10:25-11:7.)  After eight months or so, her relatives informed her she was not paid properly. (Tr. at 11:8-24.)

Plaintiff pleaded that Rana Poultry did not maintain time records for her work time and that she did not receive weekly records of her compensation or time worked. (Compl. ¶¶ 39-40)  Thus, she did not receive any written notice about her pay rate or pay at her time of hire or thereafter. (Compl. ¶¶ 31, 40-41; ECF No. 24-3 ¶ 10.)

Plaintiff served Defendant Rana Poultry with a copy of the complaint in this action on January 14, 2025. (ECF Nos. 5, 11.)  An attorney for Rana Poultry briefly appeared after this motion was filed, but that attorney promptly moved to withdraw. (ECF No. 35-36.)  The motion to withdraw was denied without prejudice. (ECF No. 37.)  Accordingly, Plaintiff sought and obtained a certificate of default. (ECF No. 12.)  Plaintiff thereafter moved for a default judgment and damages and served Defendant Rana Poultry with a copy of the default judgment motion papers on September 19, 2025.

## LEGAL STANDARD

"Federal Rule of Civil Procedure ("Rule") 55 governs judgments against a party that has failed to plead or otherwise defend itself" in an action. *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 217 (E.D.N.Y. 2016).  Rule 55 empowers the Clerk of the Court, upon notification from the

3

moving party, to note the default of the party failing to defend. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 505 (2d Cir. 2011) (citing Fed. R. Civ. P. 55(a)). Once the Clerk issues a certificate of default, the moving party may apply for entry of default judgment, pursuant to Rule 55(b). *Id.* A default constitutes an admission of all well-pleaded factual allegations in the complaint, and the allegations as they pertain to liability are deemed true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

In determining whether to grant a motion for default judgment, courts within this District consider three factors: "[1] whether the defendant's default was willful; [2] whether defendant has a meritorious defense to plaintiff's claims; and [3] the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (cleaned up); *see also Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455-57 (2d Cir. 2013) (applying these factors in review of lower court's grant of a default judgment).

Here, Plaintiff has satisfied the procedural requirements of Rule 55 by submitting a request for both entry of default and default judgment. Further, all three of the foregoing factors weigh in Plaintiff's favor.  First, the Defendants' failure to make an appearance and to respond to either Plaintiff's Complaint or Motion for Default Judgment are indicative of willful conduct. *See Indymac Bank, F.S.B.*, 2007 WL 4468652, at *1 (holding that non-appearance and failure to respond to a complaint or motion for default judgment indicate willful conduct). Indeed, here, Rana Poultry hired (and then apparently shortly thereafter fired) counsel to represent them in this action, further supporting a finding of willfulness. (ECF Nos. 35-36.)

4

Second, there is no information before the Court regarding any meritorious defenses to Plaintiff's claims because Defendants have not provided any information to this Court. Third, Plaintiff will be prejudiced if denied the ability to seek judgment by default because there are no alternative avenues for legal redress.

On a default judgment motion, the defendant is deemed to have admitted all of the well pleaded factual allegations contained in the complaint. Fed. R. Civ. P. 8(b)(6); *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013). However, "because a party in default does not admit conclusions of law," it is incumbent upon the Court to consider whether the plaintiff has pleaded facts sufficient to establish the defendant's liability with respect to each cause of action. *See Zhen Ming Chen v. Y Café Ave B Inc.*, No. 18-cv-4193 (JPO), 2019 WL 2324567, at *1 (S.D.N.Y. May 30, 2019). When determining liability from default, the non-defaulting party is entitled to all reasonable inferences from the evidence offered. *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 295 (E.D.N.Y. 2015).

"Once liability is established, the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks." *Bleecker v. Zetian Sys., Inc.*, No. 12-cv-2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citations omitted).

"Establishing the appropriate amount of damages involves two steps: (1) 'determining the proper rule for calculating damages on . . . a claim'; and (2) 'assessing plaintiff's evidence supporting the damages to be determined under this rule.'" *Begum v. Ariba Disc., Inc.*, No. 12-cv-6620 (DLC), 2015 WL 223780, at *4 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Credit Lyonnais*, 183 F.3d at 155).

**DISCUSSION**

**1.      Jurisdiction over the Subject Matter and Defaulting Defendant**

The Court has both subject matter over this case and personal jurisdiction over the Defendants. Federal subject matter jurisdiction exists over Plaintiff's federal FLSA claim pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and supplemental jurisdiction over related state claims pursuant to 28 U.S.C. § 1367(a).  Additionally, the Court has personal jurisdiction over the Defendant Rana Poultry insofar as it is alleged to reside in and have its principal place of business in New York. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (noting a corporation is "'essentially at home' . . . where it has its principal place of business").

**2.      Liability Under the FLSA and the NYLL**

The FLSA was enacted by Congress to "protect all covered workers from substandard wages and oppressive working hours, labor conditions that are detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." *Barrentine v. Arkansas-Best Freight Sys. Inc.,* 450 U.S. 728, 739 (1981) (cleaned up) (quoting 29 U.S.C. § 202(a)).  To establish a claim under the FLSA, a plaintiff must show that: (1) he or she was an "employee" of the defendants, as defined by the statute; (2) that the defendants were employers engaged in commerce; and (3) that the employment relationship

6

was not exempt from the FLSA. *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90-97 (2d Cir. 2013) (plaintiff alleged facts about employment status and duties to satisfy FLSA claim); *see also Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 31-32 (E.D.N.Y. 2015) (analyzing these three elements).

Section 206 of the FLSA sets forth the minimum hourly wage that employers must pay their employees. 29 U.S.C. § 206(a)(1)(C).  Section 207 specifies that an employer must pay employees who work more than forty hours during a workweek for the excess hours "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1).  There is a presumption that an employee is entitled to overtime; an employer bears the burden of proving that an employee is exempt from overtime. *See* 29 USC § 207(a)(1); *Bilyou v. Dutchess Beer Distributors, Inc.,* 300 F.3d 217, 222 (2d Cir. 2002) (recognizing that exempt status under the FLSA is an affirmative defense).  Employers who violate the FLSA's minimum wage and overtime provisions are liable for the amount of unpaid wages and an additional equal amount as liquidated damages. 29 USC § 216(b).

New York's Labor Law is the state analogue to the federal FLSA.  Although the Labor Law "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales," it otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime. *Herrera v. Tri-State Kitchen and Bath, Inc.*, No. 14-cv-1695 (ARR) (MDG), 2015 WL 1529653, at *4 (E.D.N.Y. March 31, 2015).  The New York Labor Law also expressly provides that employees are entitled to recover all unpaid wages and liquidated damages at a rate of 100 percent of the wages due. *See* N.Y. Lab. Law § 198(1-a); *Chun Jie Yin v. Kim*, No. 07-cv-1236 (DLI) (JO), 2008 WL 906736, at *6-7 (E.D.N.Y. April

1, 2008); *Jowers v. DME Interactive Holdings, Inc.,* No. 00-cv-4753 (LTS) (KNF), 2006 WL

1408671, at *9-14 (S.D.N.Y. May 22, 2006).

Here, Plaintiff pleaded and attested that Rana Poultry was her employer and she was its

employee.  She also pleaded that the business had more than $500,000 in revenues, thereby

meeting the statutory threshold for coverage under the FLSA.  29 USC § 203(s)(1)(A)(i)-(ii).

Additionally, the complaint asserts that Rana Poultry was directly engaged in commerce by, for

example, handling goods that travel in commerce.  This is sufficient to demonstrate that

Defendants were engaged in commerce.  *Rahman v. Red Chili Indian Cafe, Inc.*, No. 17-cv-5156

(RA), 2021 WL 2003111, at *2 (S.D.N.Y. May 19, 2021).  Further, because Defendant failed to

make any substantive filings, it cannot establish any exemption from overtime.  Therefore,

Plaintiff has satisfied her entitlement to unpaid overtime.  And, insofar as Defendant did not

keep records, Plaintiff may prove her hours by submitting a declaration and/or testifying, which

she has done. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by*

*statute on other grounds,* 29 U.S.C. § 254(a); *see also Kuebel v. Black & Decker Inc.*, 643 F.3d 352,

364-65 (2d Cir. 2011).

### i.    Minimum Wage

New York's minimum wage was at all relevant times higher than the federal minimum

wage.[1]  Under applicable law, Plaintiffs are entitled to New York's more generous minimum

---

[1] The federal minimum wage during Plaintiffs' employment was $7.25 per hour.  29 U.S.C. § 206(a)(1). The
federal overtime rate is 1.5x the employee's regular hourly rate.  29 U.S.C. § 207(a)(1).  In New York City, for
employers with ten or fewer employees the minimum wage was $15 per hour in 2021 through December 31,
2023.  It was $16 per hour starting January 1, 2024. N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 142-2.1(a)(1)(ii).  The
overtime rate also is 1.5 times the regular rate. 12 N.Y.C.R.R. § 142-2.2.  When an employee is paid on any
basis other than an hourly rate, the regular hourly rate is determined by dividing the total hours worked during
the week into the employee's total earnings. 12 N.Y.C.R.R. § 142-2.16.

wage and overtime rates. *Gao v. Jian Song Shi,* No. 18-cv-2708 (ARR) (LB), 2021 WL 1949275, at *11 (E.D.N.Y. Apr. 30, 2021), *report and recommendation adopted sub nom. Bin Gao v. ABC Corp.,* 2021 WL 1946322 (E.D.N.Y. May 15, 2021) (applying NY's minimum wage damages because they are more generous under the NYLL than under FLSA.)

Plaintiff has established through her declaration that she did not receive pay at New York's minimum wage rate, which was $15 per hour in 2021 through 2023 and $16 per hour in 2024. Rather, she received only $12.20 per hour based on her weekly wages divided by her hours worked each week. 12 N.Y.C.R.R. § 142-2.16. The following chart sets forth the minimum wage due:

| Time Period | Wage Paid (weekly pay/weekly hours) | New York City Minimum Wage Rate | Amount of Hourly Underpayment | No. of Hours Worked / Week | Amount of Weekly Underpayment of minimum wage | Total |
|---|---|---|---|---|---|---|
| 1/1/2021-10/31/2021 (43 weeks, 2 days) | $12.20/hour | $15/hour | $2.80/hour *(i.e., $15 - $12.20 = $2.80)* | 61.5 | $172.20 | **$7,462.00** *I.e., $172.20/ week x 43.333 weeks = $7,462.00* |
| 3/1/2023-12/31/2023 (43 weeks, 4 days) | $12.20/hour | $15/hour | $2.80/hour | 61.5 | $172.20 | **$7,519.40** |
| 1/1/2024-9/30/2024 (39 weeks) | $12.20/hour | $16/hour | $3.80/hour | 61.5 | $233.70 | **$9,114.30** |

The total minimum wage payment due to bring Plaintiff to $15/hour for all hours worked is **$24,095.70**.

**ii.        Overtime Wages**

Plaintiff also testified that she did not receive additional pay for hours worked over 40 in a week.  Since she worked 61.5 hours per week, she regularly worked 21.5 hours of overtime. The overtime rate was $22.5/hour, except in 2024, when it was $24/hour.  Since she was only paid $12.20 per hour, she necessarily did not receive the required rates for the overtime hours she worked each week.  Insofar as the Court computed the minimum wage overpayment for all hours worked in the chart above, the Court computes the overtime premium, or half-time rate, in the chart below.  This is the additional overtime premium due for hours worked above 40 each week.

| Time Period | New York Overtime Rate (1.5x hourly rate) | Half-time Rate | No. of Overtime Hours Worked / Week | Weekly Underpayment of Overtime Premium | Total |
|---|---|---|---|---|---|
| 1/1/2021-10/31/2021 (43 weeks, 2 days) | $22.5 | $7.50 | 21.5 | $161.25 | **$6,987.50**<br><br>*I.e., $161.25/week x 43.333 weeks = $6,987.50* |
| 3/1/2023-12/31/2023 (43 weeks, 4 days) | $22.5 | $7.50 | 21.5 | $161.25 | **$7,041.25** |
| 1/1/2024-9/30/2024 (39 weeks) | $24 | $8 | 21.5 | $172 | **$6,708.00** |

Based on the above chart, the total amount of overtime premium due for hours worked in excess of 40 hours each week is **$20,736.75.**

10

### iii.    Spread of Hours Pay

Plaintiff also seeks damages for non-payment of so-called "spread of hours" pay.  Under New York law, certain employees who work more than ten hours in a day can recover an extra hour's worth of pay at the state minimum wage rate for each such day. 12 N.Y.C.R.R. § 142-2.4. Section 663 of the Labor Law expressly authorizes an employee to sue his or her employer to recover unpaid wages otherwise due to him or her under the statute. N.Y. Lab. Law § 663(1).

Plaintiff attests that she regularly worked 10.25 hours per day.  This exceeds 10 hours, meaning that she is entitled to an additional hour of pay at the basic minimum wage rate for each day she worked. *See, e.g.*, *Fermin,* 93 F. Supp. 3d at 45-46 (holding restaurant employees were entitled to recover spread-of-hours pay pursuant to NYLL, where employees at times worked in excess of ten hours in per day, and employer failed to pay them NYLL minimum wage); 12 N.Y.C.R.R. § 142-2.4.  I compute the spread of hours pay due as follows:

| Time Period | Days (at 6 working SOH shifts/week) | Rate | Total |
|---|---|---|---|
| January 1, 2021 to October 31, 2021 (43 weeks, 2 days) | 260<br><br>(*i.e.*, 6 shifts x 43 weeks + 2 shifts) | $15 | $3,900.00 |
| March 1, 2023 to December 31, 2023 (43 weeks, 4 days) | 262 | $15 | $3,930.00 |
| January 1, 2024 to September 30, 2024 (39 weeks) | 234 | $16 | $3,744.00 |

Based on the above, the total spread of hours pay due is **$11,574.00.**

### iv.     Liquidated Damages

Plaintiff seeks liquidated damages under both the FLSA and New York's Labor Law.  Both laws provide for liquidated damages in an amount equal to the unpaid wages.  Plaintiff cannot recover liquidated damages under both statutes. *See Rana v. Islam*, 887 F.3d 118, 122-23 (2d Cir. 2018).  Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith." *Zubair v. EnTech Eng'g, P.C.*, 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012); see N.Y. Lab. Law § 663(1).  As Defendants have defaulted, they have not established good faith to rebut the liquidated damages presumption.

### v.     Total Damages for Wage Violations

Based on the total amounts due to Plaintiff based on the above charts, I calculate the total unpaid wages (comprising unpaid overtime, minimum wage, improper deductions and spread of hours) to be $112,537.62.

| Total Unpaid Minimum Wage | Total Spread-of-Hours | Total Unpaid Overtime Premium | Total Amount of Unpaid Wages | Total Liquidated |
|---|---|---|---|---|
| $24,095.70 | $11,574.00 | $20,736.75 | **$56,406.45** | **$56,406.45** |

### i.     Statutory Damages

Plaintiff also seeks statutory damages for Defendants' failure to provide wage notices and wage statements in compliance with New York's Wage Theft Prevention Act ("WTPA"), and NYLL § 195(1) and (3), which requires employers to "provide [their] employees, in writing . . . a notice containing . . . the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission" and "furnish each employee with a statement with every payment of wages . . . ." N.Y. Lab. Law. § 195(1) and (3).  NYLL § 198(1-b) sets the amount of

12

statutory damages an employee may recovery for violations of the notice provision of NYLL § 195(1) at $50.00 per day "for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." N.Y. Lab. Law § 198(1-b).  Likewise, the statute sets statutory damages for violations of the statement provision of NYLL § 195(3) at $250.00 per day for each day the violation continues. N.Y. Lab. Law § 198(1-d).  Section 198 remedies "may be enforced simultaneously or consecutively so far as not inconsistent with each other." N.Y. Lab. Law § 198(2).

Because Defendants are in default, this Court accepts Plaintiff's representations that Defendants failed to provide her with the required notices and statements under NYLL §§ 195(1) and (3). *See Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-cv-10234 (JGK) (JLC), 2016 WL 4704917, at *14-15 (S.D.N.Y. Sept. 8, 2016) (awarding plaintiff statutory damages under NYLL § 195(1) and (3) where defendants defaulted), *report and recommendation adopted*, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).  Plaintiff further testified that she was injured by the failure to receive a wage notice and wage statements.  Indeed, as a low wage worker who was not fluent in English, Plaintiff demonstrated in her testimony before the Court that she was disadvantaged by not receiving a wage notice in her native language because it would have informed her of what her wages were and allowed her to evaluate that against what the law required, including by consulting with others more knowledgeable than her.  Similarly, Plaintiff's testimony demonstrated that she was harmed by not receiving the wage statements for much the same reasons.  Plaintiff testified that she only found out that she was being paid incorrectly after being informed by her relatives roughly eight months after starting work the second time.  Thus, she has standing to separately assert a claim for statutory damages because

the lack of required documents delayed her ability to understand her pay and learn that she was being paid incorrectly. *See Guthrie v. Rainbow Fencing*, 113 F.4th 300, 308-09 (2d Cir. 2024). Given the violations occurred over the course of approximately 756 working days, she is entitled to the full statutory amount of damages for both the notice violations and the statement violations, collectible consecutively, in the amount of $5,000.00 each, for a total of $10,000.00.[2]

### ii.    Pre-judgment Interest

Plaintiff also requests and is entitled to prejudgment interest under the NYLL. *See* N.Y. Lab. Law § 663; *Fermin*, 93 F. Supp. 3d at 48 (E.D.N.Y. 2015) ("In contrast to the FLSA, the NYLL permits the award of both liquidated damages and pre-judgment interest."). "Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Fermin*, 93 F. Supp. 3d at 49 (cleaned up) (quoting *Mejia v. East Manor USA Inc.,* No. 10-cv-4313 (NG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), *report and recommendation adopted*, 2013 WL 2152176 (E.D.N.Y. May 17, 2013)).

The statutory rate of interest applicable in this case is nine percent per annum. N.Y. C.P.L.R. 5004.  Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date. N.Y. C.P.L.R. 5001(b).  The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 49.

---

[2] A notice violation will reach the statutory maximum fine of $5,000.00 after 100 consecutive days of violation ($50 per day x 100 days = $5000), while a statement violation will reach the statutory maximum fine of $5,000.00 after twenty missed wage statements ($250 per statement x 20 statements = $5,000.00). Accordingly, given she worked around 756 days (or approximately 126 weeks) and alleges being paid once weekly, she easily hits the maximum for each.

| Dates Employed | Midpoint Date | Unpaid Wages Damages | Calculate 9% per annum | Per Diem Rate |
|---|---|---|---|---|
| January 2021 to September 2024 | November 16, 2022 | $56,406.45 | .09/365 | $13.91 |

Based on the above, if the Report and Recommendation is adopted, I respectfully recommend that Plaintiff be awarded pre-judgment interest at the rate per diem rate of **$13.91** from the date of November 16, 2022, to the date the Court adopts this Report and Recommendation.

### iii.    Attorneys' Fees

The FLSA and NYLL both provide for an award of reasonable attorneys' fees to successful plaintiffs.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663(1).  Plaintiffs are represented by The Samuels Law Firm and work was performed by attorneys Reena Frost and Michael Samuel. (ECF No. 42 ¶ 111.)  Plaintiffs seek an attorneys' fee award of $2,190 and costs in the amount of $482.70. *Id.*

Attorneys' fee awards are typically determined using the lodestar approach, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)).  "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.  In assessing whether an attorney's hourly rate is reasonable, courts may rely on their own

knowledge of private firms' hourly rates. *See Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596

(S.D.N.Y. 2012) (citing *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund,* 831 F.2d 407, 409

(2d Cir. 1987)).  "Courts in this District have determined in recent cases that a fee in the range of

$250 to $450 is appropriate for experienced litigators in wage-and-hour cases." *Xochimitl*, 2016

WL 4704917, at *20 (approving rates of $300/hour and $425/hour for different attorneys on the

case; collecting cases); *see also Lopez v. Emerald Staffing, Inc.*, No. 18-cv-2788 (SLC), 2020 WL

915821, at *13 (S.D.N.Y. Feb. 26, 2020) ("In this district, courts generally award experienced

wage-and-hour attorneys between $300 to $400 per hour").

In assessing whether the number of hours billed by the attorney is reasonable, courts

consider "whether, at the time the work was performed, a reasonable attorney would have

engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation

omitted).  Plaintiff bears the burden to produce "contemporaneous time records indicating, for

each attorney, the date, the hours expended, and the nature of the work done."  *Scott v. City of

New York*, 626 F.3d 130, 133-34 (2d Cir. 2010) (cleaned up); s*ee also Fisher v. SD Prot. Inc.*, 948

F.3d 593, 600 (2d Cir. 2020).

District courts exercise "considerable discretion" in awarding attorneys' fees. *See D.B. ex

rel. S.B. v. N.Y.C. Dep't of Educ.*, 18-cv-7898 (AT) (KHP), 2019 WL 6831506, at *1 (S.D.N.Y. Apr. 22,

2019) (cleaned up), *report and recommendation adopted*, 2019 WL 4565128 (S.D.N.Y. Sept. 20,

2019); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983);  *McDaniel v. County of

Schenectady*, 595 F.3d 411, 414 (2d Cir. 2010); *Arbor Hill*, 522 F.3d at 190.  However, when

awarding attorneys' fees, the court must also "clearly and concisely state reasons supporting the

award." *Tackie v. Keff Enters. LLC*, No. 14-cv-2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept.

16, 2014) (citing *Hensley*, 461 U.S. at 437; *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014)) (awarding attorneys' fees under FLSA and NYLL).

Plaintiff is represented by Michael Samuel of The Samuel Law Firm.  Mr. Samuel has practiced law in New York since 1993 and litigated more than 250 FLSA cases.  His regular hourly rate is $500. (ECF No. 24 ¶16)  Andrew Beresin is counsel to The Samuel Law Firm and has been practicing law since 1992.  He has five-years' experience litigating FLSA cases.  His regular hourly rate is $400. (*Id.*)  Courts in this District have awarded these regular rates to Mr. Beresin and Mr. Samuel in an FLSA case. *Velez v. S.T.A. Parking Corp.,* No. 23-cv-4786 (AT), 2024 WL 552781, at *4 (S.D.N.Y. 2023).  Reena Forst is counsel to The Samuel Law Firm and has practiced law in New York since 1993.  Her regular hourly rate for FLSA cases is $300. (ECF No. 24 ¶ 16)

Ms. Forst spent 5 hours preparing the motions for a certificate of default and default judgment, along with supporting documentation.  (ECF No. 24 ¶17)  Mr. Samuel spent 1.5 hours meeting with the plaintiff and preparing and filing the complaint and supportive documents. (*Id.*)

The rates sought by Plaintiff's lawyers are reasonable insofar as they have been awarded by at least one other court in this District and are in line with rates awarded in FLSA cases to attorneys with similar experience.  Both lawyers who worked on the matter have practice law for decades and their papers in this matter were well prepared and indicative of their experience.  For these reasons, the rates requested are reasonable. *See, e.g.*, *Velez,* 22024 WL 552781, at *4 (awarding plaintiff's counsel $500 per hour); *Xochimitl*, 2016 WL 4704917, at *20 (finding a range of $250 to $450 per hour reasonable; collecting cases); *Lopez v. Emerald Staffing, Inc.*, No. 18 CIV. 2788 (SLC), 2020 WL 915821, at *13 (S.D.N.Y. Feb. 26, 2020) (finding

rates of $300 to $400 per hour to be reasonable).  Accordingly, I recommend awarding Mr. Samuel the rate of $500 and Ms. Frost the rate of $300.

Counsel's time spent litigating this matter is also reasonable.  Counsel provided a breakdown of time spent on the case and the low number of hours spent reflect their experience in these cases and efficiency.  Ms. Forst spent 4.8[3] hours on this matter, principally related to the preparation of default papers.  Mr. Samuel spent 1.5 hours on this matter. Therefore, the full amount of time sought is reasonable and should be awarded.  Accordingly, I recommend that attorneys' fees in the amount of **$2,190** be awarded.

### iv.    Costs

Both the FLSA and NYLL entitle prevailing plaintiffs in wage-and-hour actions to recover costs.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Fisher*, 948 F.3d at 600 (quoting *Reichman Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)); *see also Perez Garcia v. Hirakegoma Inc.*, No. 17-cv-7608 (SLC), 2020 WL 1130765, at *13 (S.D.N.Y. March 9, 2020).

Plaintiff's counsel seeks payment of $405 in costs for a filing fee and $77.70 in service fees.  These costs are the type that is typically awarded and are supported by the submissions. Therefore, I respectfully recommend that Plaintiff be awarded **$482.70** in costs.

---

[3] It appears there may be an error in the billing records in Samuel Affirmation.  Specifically, Mr. Samuel states that Ms. Forst worked a duration of 00:30 on "Preparation and filing of Request for Certificate of Default and supportive documents" at her $300 hourly rate.  However, when Mr. Samuel multiplied this time period— which the Court would ordinarily interpret to be half an hour—by the hourly rate, the result was $90.00, instead of $150.00.  If that calculation is correct, then perhaps Mr. Samuel intended to say that Ms. Forst worked 0.3 hours on the certificate of default request.  The Court accepts the Billable Amount figure in the table in the Samuel Affirmation at paragraph 17, and recommends awarding the $90.00 amount, rather than the $150.00 amount.

**v.        Post-Judgment Interest**

Plaintiff is also entitled to post-judgment interest.  "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Duffy v. Oyster Bay Indus., Inc.,* No. 10-cv-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. March 29, 2011), *report & recommendation adopted,* 2011 WL 2259749 (E.D.N.Y. June 2, 2011); *see generally Begum v. Ariba Disc., Inc.,* No. 12-cv-6620 (DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and NYLL wage-and-hour case).  Therefore, I respectfully recommend that the Plaintiff also be awarded post-judgment interest to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. *See id.*

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the motion for default be granted and that Plaintiff be awarded **$122,812.90** in damages ($56,406.45 x 2 + $10,000.00) and **$482.70** in costs, as well as attorneys' fees of **$2,190.00**, with pre-judgment interest at a rate of **$13.91** per diem, running from November 16, 2022, to the date the Court adopts this Report and Recommendation (if it chooses to adopt it), and post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

19

Dated: January 9, 2026
New York, NY

Respectfully submitted,

*Katharine H Parker*
_____

Katharine H. Parker
United States Magistrate Judge

### NOTICE

Plaintiff shall have fourteen days and Defendant shall have fourteen days from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P.72(b)(2).

Plaintiff shall have fourteen days to serve and file any response. Defendant shall have fourteen days to serve and file any response. Any objections and any responses to such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jennifer L. Rochon at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and served on the other parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Rochon. The failure to file timely objections shall result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).